**United States District Court**
**Eastern District of Michigan**
**Southern Division**

| | |
|---|---|
| The United States of America, | Criminal No. 21-cr-20354 |
| Plaintiff, | Hon. Paul D. Borman |
| v. | |
| D-7 Spoonie Johnson, | |
| Defendant. | |

## Government's Response Opposing
## [Dkt. 545] Motion for Revocation of Detention Order

Spoonie Johnson is an active, high-ranking member of the Traveling Vice Lord ("TVL") branch of the violent Almighty Vice Lord Nation ("AVLN") gang, a violent man, and a drug trafficker, facing a presumption of pretrial detention. Johnson is a 5-Star Universal Elite, giving him the highest status across all branches of the AVLN, and is a leader within the TVL branch. He is a founding member of the TVL branch in Michigan, served as its leader from at least as early as 2016 and into 2019, and as recently as October 2020 was a member of the controlling Michigan Board for the TVLs. He has sold drugs on multiple occasions.

Johnson also has a violent criminal history. In 1996, he was convicted of firearms offenses, multiple counts of first-degree criminal sexual conduct, felony armed robbery, and felony carjacking, for which he served 17 years in prison. Since

then, he has not abided by the requirements of the Michigan Sex Offender Registry, failing to verify his address since August 2016.

Johnson has multiple aliases that he has used for decades, including the name Richard Simms under which he was incarcerated for his sex and robbery offenses. And he has 7 active bench warrants for failing to appear for court hearings. For these and other reasons, Pretrial Services recommended detention at the time of Johnson's arrest and arraignment in this matter in June 2021.

At his arraignment, Johnson consented to detention, and an Order was entered directing such. (ECF No. 160: Consent Order of Detention, PageID.404). Johnson now seeks revocation of this order and to be released on conditions. (ECF No. 545: Mot. to Revoke Det. Order, PageID.2560). Because Johnson remains a danger to the community and a flight risk, this Court should deny his motion and order his continued pretrial detention in this matter.

I.   **Legal Standard**

Pursuant to the Bail Reform Act, 18 U.S.C. § 3142, a defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Under § 3145, this Court reviews a magistrate judge's pretrial order *de novo*. *See United States v. Yamini*, 91 F. Supp. 2d 1125, 1128-29 (S.D. Ohio Feb. 24, 2000) (collecting cases). The United States moves for detention under § 3142(f)(1)(C), because the charges involve a drug

offense punishable by 10 years or more. The government seeks detention on non-appearance and dangerousness grounds.

Because Johnson is charged with drug crimes carrying penalties of 10 years or more of imprisonment, there is a statutory presumption of detention, 18 U.S.C. § 3142(e)(3)(A), which Johnson may rebut if he "comes forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Once a defendant satisfies his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* (internal citation omitted). "The presumption remains a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.* "To rebut the presumption, therefore, a defendant should present all the special features of his case that take it outside the congressional paradigm." *Id.* at 946 (internal citations and quotations omitted).

In addition to the presumption of detention, the Court must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence as it relates to dangerousness and risk of flight; (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

3

## II.   Proffer of Facts

Johnson is charged in Counts 1 and 4 of the Indictment, with a racketeering conspiracy and controlled-substances trafficking conspiracy, respectively. *See* (ECF No. 1: Indictment, PageID.3-122, 126-130). Johnson faces up to life imprisonment on both counts, and, because of his criminal history, a 15-year mandatory minimum sentence of imprisonment. Because Johnson consented to detention at his arraignment, no prior proffer of facts has been made. Thus, the United States now makes this factual proffer. In addition to the below noted facts, the government also offers (1) a previously filed written proffer concerning features of the AVLN and its violence (ECF No. 85: Written Proffer in Support of Mot. for Det.); and (2) the Pretrial Services Report.

### i.   **The AVLN is an organized, violent gang.**

The AVLN is a highly organized, violent gang adhering to strict by-laws and a chain-of-command structure. (ECF No. 85: Written Proffer, PageID.266-70). Vice Lord members must follow orders from higher-ranked leaders, like Johnson. (*Id.* at PageID.268). AVLN literature requires that members must "never deny [an] order from [a] superior officer of this nation. You will carry it out immediately[.]" (*Id.*). This includes orders to commit violent acts like murder. (*Id.*).

Vice Lords promote a climate of fear through violence and threats of violence. Gang members are strictly prohibited from speaking with outsiders about the Vice Lords or from cooperating with law enforcement. Vice Lords kill members suspected

4

of cooperating with law enforcement.  *See* (*id.* at PageID.270-74).  They also have a long memory and do not forget when gang members cooperate with law enforcement. (*Id.* at PageID.273).  On May 27, 2015, AVLN members fired 23 shots into the home of V.T. and S.T., two former Vice Lords whom AVLN members believe cooperated with federal law enforcement.  During the shooting, several bullets injured V.T., and S.T., as well as their family members, T.T.-1 and T.T.-2—mere centimeters made the difference between a quadruple homicide and the victims' eventual survival of the shooting.  Nearly four years later—after a federal prosecution for AVLN members involved in the May 2015 shooting—AVLN members continued to discuss plans to murder the suspected cooperators.

Current power struggles within AVLN leadership also present significant danger for violent retaliation.  Under AVLN law, treason is punishable by "no less than a life of misery or Death."  (*Id.* at PageID.275).  Members of Johnson's branch of the AVLN, the TVLs, and the Mafia Insane Vice Lords ("MIVL") were spearheading a plan to murder and overthrow Insane Vice Lord ("IVL") Prince, and leader of the AVLN in Michigan, D-1 Kevin Fordham, and those underneath his leadership.  These plans involved recorded discussions with members of the MIVL and the TVL branches.

Vice Lords also possess and share firearms to protect themselves and other AVLN members.  Under AVLN law, gang members are required to protect and defend AVLN members, which includes retaliation for any violence carried out

5

against an AVLN member. (*Id.* at PageID.279). AVLN literature requires, "If One Member Fights, We All Fight." (*Id.*). Specifically, "it is the unspoken obligation of every VL [Vice Lord] to defend himself [and] every other VL to the extent of giving their life[,] if necessary" and "[i]f any VL is attacked[,] it is the sworn duty of every VL to overcome his attacker by whatever means necessary." (*Id.*).

Gang members are required to "aid and assist" other AVLN members. (*Id.*). Specifically, Law #1 of the AVLN's Supreme Constitutional Laws provides, "[a]t any time a member is in trouble, in danger, or need of assistance, you are to assist them, whether they are right or wrong[,] to the best of your ability[.]" (*Id.* at PageID.279-80). And Law #14 provides, "A Vice Lord must act as a solider for the [Almighty Vice Lord] Nation to the point of his/her death." (*Id.*) This includes carrying and using firearms to protect themselves and other AVLN members. (*Id.*)

The AVLN also participates in drug trafficking involving fentanyl, cocaine, cocaine base, heroin, ecstasy/MDMA, methamphetamine, prescription pills, and marijuana. (*Id.* at PageID.280). Based on their involvement in the gang, AVLN members enjoy connections to drug suppliers and utilize an interstate network to facilitate drug trafficking. (*Id.*).

### ii. Johnson is one of the highest ranking AVLN members in Michigan, and a drug trafficker.

Johnson is a long-standing member of the TVL branch of the AVLN. He has held a high rank since at least August 2015, only a few months after the end of his parole in May 2015, as shown by AVLN documents recovered during a search warrant in a related investigation under his alias of Richard Simms as a "Branch Elite," giving him significant authority within the TVLs. In July 2016, Johnson was promoted to Chief of the non-incarcerated TVLs, and had attained the rank of 3-Star Universal Elite. The "Universal Elite" status gave Johnson authority and status not just within the TVLs, but across branches of the AVLN, affording him the authority to direct the actions of others, orders that they were required to follow. By 2018, Johnson, while still Chief of the TVLs in Michigan, had attained the rank of 5-Star Universal Elite, the highest cross-branch rank within the AVLN.

In 2019, D-4 Terry Douglas took over as Chief of the Michigan TVLs from Johnson, but Johnson maintained his association and authority with the Vice Lords. In July 2020, Johnson was among many members of the Vice Lords attending a gathering at Field's Playground in Detroit, and he remained on the controlling board of the Michigan TVLs through at least October 2020 when he discussed his association with the board during a recorded conversation. In February 2021, a call between he and D-1 Kevin Fordham was intercepted, during which Johnson and Fordham discussed the status of other members of the TVLs, including Johnson's

7

correct knowledge of the source of supply for the drugs sold by TVLs under Douglas. And in April 2021, Johnson, along with multiple other members of the AVLN, attended the viewing for the deceased Chief of one of the AVLN branches, during which Johnson nearly hospitalized a security guard there when he assaulted the guard for approaching he and several other Vice Lords and challenging them for drinking alcohol in the parking lot.

Johnson has been trafficking in drugs since before the expiration of his term of parole, and continuing to shortly before the indictment here. Following his release from prison in May 2013, Johnson's parole expired in May 2015. In January 2015, in a recorded jail call to Johnson from an incarcerated Vice Lord, Johnson discussed prices for marijuana that he was selling, including quarter-pound quantities. In August 2018, in a recorded call Johnson discussed looking for a new source of supply for drugs to sell. Later that same month, Johnson discussed on another recorded call his plan to raid a "stash house" to steal money and drugs, and discussed that he and the members of the robbery crew should wear DEA shirts. In September 2019, Johnson exchanged Facebook messages with an individual to whom he had sold drugs the day before, discussing the quality of the drugs Johnson had sold. In December 2020, Johnson sold 7 grams of cocaine to a confidential informant, and provided a "sample" amount of 0.2 gram of cocaine in May 2021 to that same informant.

> **iii. Johnson has a violent felony history, a long history of failing to abide by conditions of his sex offender registration requirements, fails to appear for court dates, has multiple aliases, and continually violates the law.**

Johnson has a chillingly violent criminal history. As noted in the Pretrial Services Report, in 1996 Johnson was convicted of a felony firearms count, two counts of first-degree felony criminal sexual conduct with accomplices, three additional counts of first-degree criminal sexual conduct with use of a weapon, one count of felony armed robbery, and felony carjacking. Those offenses involved Johnson and another Vice Lord approaching a man and a woman seated in their car. The male driver was threatened with a handgun, forced from the car, and robbed of the cash that he had on him. Johnson and his codefendant forced the woman passenger into the back seat and drove away. Johnson and his codefendant took turns driving, while the other sexually assaulted the woman at gunpoint. This ongoing assault didn't end until a police pursuit eventually caught up to the stolen car. The woman whom they sexually assaulted had to undergo 24 weeks of therapy and rape crisis counseling sessions in order to recover.

Johnson was paroled in May 2013, and his term of parole expired in May 2015. Since the expiration of his parole, Johnson has consistently disregarded multiple legal requirements and court dates. By virtue of his multiple first-degree criminal sexual conduct convictions, Johnson was required by law to verify his address with the Michigan Sex Offender Registry quarterly. Failure to do so is a violation of state and,

potentially, federal law. Johnson has not done so since August 31, 2016. And, while these offenses may be minor compared to Johnson's previous offenses and current charges before this Court, Johnson's pattern of failing to appear for mandatory court hearings for numerous traffic offenses is extensive and long lasting: three open failure to appear bench warrants from 2016; three more from 2018; and yet another from January 2021.

    Johnson also has several aliases that he has used extensively. Johnson has gone by the name "Richard Sims," and was, in fact, convicted and incarcerated for his robbery and sex offenses under that name. He has also used the name "Alton Lanier." Johnson has been unemployed since the beginning of the pandemic, was using cocaine weekly and marijuana daily prior to his arrest in this matter, and has family ties in Mississippi. The residence to which he proposes to return on Five Points Street in Detroit, that he shares with his girlfriend Ms. Manigault whom he proposes as a third-party custodian, was searched by the ATF in March 2021. Vice Lords literature was recovered, as was multiple kinds of ammunition and body armor. Johnson acknowledged that he was aware of the presence of that ammunition, and that he knew that he was not supposed to be in possession of it.

**Argument**

Johnson—a violent man, high ranking gang member, and drug trafficker—poses a significant danger to the community and nonappearance risk. Johnson also faces a presumption of detention. He should remain detained.

> **i.** **Johnson is a drug trafficker and a danger to the community.**

Johnson is charged with racketeering and drug-trafficking conspiracies. Drug trafficking itself is a dangerous offense. But there is more to Johnson's dangerousness because of the gang element. "In dealing with the danger to the community or other person concept, the courts look to more than whether or not defendant himself has been guilty of physical violence[.]" *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). "[T]he concept of a defendant's dangerousness as used in the [Bail Reform] Act is to be given a broader construction than merely danger of harm involving physical violence. Congress was apparently concerned with the safety not only of a particular identifiable individual, perhaps a victim or witness, but also of the community as a whole." *Id.* (internal citations and quotes omitted). The AVLN is dangerous as an enterprise and the Court is not required to ignore this fact. *See, e.g., United States v. Billingsley*, 682 F. App'x 681, 683 (10th Cir. 2017) ("[W]e are not convinced that the district court should ignore evidence about the group as a whole. It is important context that this DTO is intensely feared.").

Johnson's dangerousness far exceeds even the danger inherent to drug trafficking. He has prior convictions for a stunningly violent group of offenses. He is one of the highest-ranking individuals in a violent gang with a robust presence in Michigan, and members around the country. There are also significant witness-safety concerns. Broadly speaking, the Vice Lords have a long and documented history of attempting to kill and killing members suspected of cooperating with law enforcement. Because of the power that leaders within the Vice Lords exert over other members, it takes only a simple phone call to direct other Vice Lords to undertake a witness-silencing mission. Johnson is a long-time member, with substantial cachet in the gang as a former Chief of a branch and a current member of the TVL Board from Michigan, with 5-Star Universal Elite status, which means that his power extends to all branches of the Vice Lords, giving him access to many avenues for ordering violence.

To add to this dangerousness, Johnson is also a drug trafficker. He is charged with a controlled-substance offenses, which is a factor under § 3142(g)(1). The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6; *see also United States v. Gray*, 20 F. App'x 473 (6th Cir. 2001) (in conspiracy to possess with intent to distribute cocaine, testimony from family members was insufficient to overcome the presumption of detention). But Johnson is far more than your average drug dealer—he has out of state connections for drugs, by virtue of his status within the AVLN.

12

The nature and circumstances of the offenses with which Johnson has been charged are serious. The AVLN is a violent, retaliatory gang, and Johnson has obvious, chilling readiness to resort to violence himself, and the authority to direct others to do so. There are no conditions or combinations of conditions—even the most restrictive condition of home incarceration—that can adequately ensure that Johnson will not seek retaliation, particularly when such retaliation can be ordered with a simple phone call or in-person meeting.  No release conditions can prevent this.

The weight of the evidence likewise supports detention.  The weight of the evidence "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948.  "[S]trong evidence against a person . . . could increase the likelihood of danger to the community because they could believe that they are more likely to be incarcerated in the future, causing them to be more likely to engage in dangerous behavior."  *United States v. Rice*, No. 3:04CR-83-R, 2006 WL 1687749, at *2 (W.D. Ky. June 19, 2006).  As discussed above, the weight of the evidence against Johnson is strong, which makes it more likely that he will engage in dangerous behavior.

For many of these same reasons, Johnson's history and characteristics likewise support detention.  He has a violent felony criminal history. He was involved in drug trafficking before the expiration of his parole in 2015. He failed to comply with sex offender registration requirements for nearly half a decade before his arrest here.

13

Johnson cannot overcome the presumption of detention. Johnson is the type of offender that, in Congress's "substantive judgment . . . should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945. He does not present "special features" that take his case "outside the congressional paradigm." *Id.* at 946. Even if Johnson rebutted the presumption of detention, it is a factor that weighs heavily in favor of detention.

### ii. Johnson is a risk of flight.

No conditions will reasonably assure Johnson's appearance as required. Johnson has the connections, motivation, and a history that shows he can disappear. Johnson is a high-ranking member in a national gang, with no stable employment. He has connections out of state to Mississippi, where his father and sibling reside. Through his Vice Lords status, he has connections with drug suppliers in other states, and has connections in multiple other states to sell those drugs. He has also successfully and repeatedly used various aliases for years.

The incentive to flee is high. Johnson is facing a 15-year mandatory minimum, and the possibility of life imprisonment. The evidence of Johnson's offenses is overwhelming—recorded calls and meetings, and other evidence establish the elements of his offenses. In the face of a high likelihood of conviction for serious offenses, there is little reason to believe that Johnson is not a substantial flight risk.

Based on his history, Johnson has shown that he will not comply with the kinds of conditions of release that are intended to keep track of him. With the threat of

criminal prosecution hanging over him for failure to simply verify his address for the sex offender registry, Johnson failed to do so for the five years before his arrest in this matter. Johnson also has a history of failing to appear for court hearings, with 7 bench warrants for failure to appear.

With this history, and Johnson's characteristics, in mind, there are no conditions of release that can adequately ensure his appearance.

### III. Conclusion

Because of Johnson's dangerousness and non-appearance risk, the Court should deny his motion, and continue his detention pending trial.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

/s A. Brant Cook
A. Brant Cook
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9756
Brant.cook@usdoj.gov

Date: January 20, 2022

## Certificate of Service

I hereby certify that on January 20, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to the attorney of record.

*/s A. Brant Cook*
A. Brant Cook
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9756
Brant.cook@usdoj.gov
